UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RACHEL MATHEWS,  )
        Petitioner,  )
          ) Nos. 1:11-cr-37-02, 1:15-cv-355
v.  )
          ) Judge Mattice
UNITED STATES OF AMERICA,  )
        Respondent.  )

**RESPONSE IN OPPOSITION TO PETITIONER'S
MOTION FILED PURSUANT TO 28 U.S.C. § 2255**

The United States of America hereby responds in opposition to petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, as well as her assorted other motions. All of petitioner's claims are untimely and meritless.

**FACTUAL AND PROCEDURAL HISTORY**

On April 2, 2011, petitioner's brother Jesse shot and killed Chattanooga Police Sergeant Tim Chapin during a foiled robbery attempt; the subsequent investigation additionally implicated petitioner, her boyfriend James Poteete, and her parents Ray and Kathleen. On April 26, 2011, they were indicted by a federal grand jury for conspiring to obstruct justice, in violation of 18 U.S.C. § 1512(k) (Count One); being accessories after the fact to a Hobbs Act Robbery, in violation of 18 U.S.C. § 3 (Count Two); being accessories after the fact to the use and carrying of a firearm during and in relation to that same Hobbs Act robbery, in violation of 18 U.S.C. § 3 (Count Three); harboring a fugitive from justice, in violation of 18 U.S.C. § 4 (Counts Four through Six); assisting a fugitive in evading arrest, in violation of 18 U.S.C. § 3 (Count Seven); and illegally concealing stolen firearms, in violation of 18 U.S.C. § 1512(c) (Counts Twelve through Fourteen). (R. 11, Indictment.)

In August 2011, petitioner pleaded guilty, pursuant to a written plea agreement, to Counts One through Three, with the remaining counts to be dismissed at sentencing. (R. 41, Plea Agreement.) As part of that agreement, petitioner waived her right to appeal his conviction or sentence, but reserved the right to appeal "a sentence imposed above the sentencing guideline range or any applicable mandatory minimum sentence (whichever is greater) determined by the district court." (*Id*. at ¶ 14 (also waiving "the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [petitioner's] conviction(s) and/or resulting sentence," except for "claims of ineffective assistance of counsel or prosecutorial misconduct").)

Petitioner specifically stipulated to the following facts in conjunction with her guilty plea:

a. On January 22, 2011, Jesse Mathews . . . robbed the Carl's Jr. restaurant in Colorado Springs, CO with a firearm. At the time [Jesse] robbed the Carl's Jr. it was engaged in and affected interstate commerce. He brandished the firearm during this robbery.

b. On February 11, 2011, [Jesse] robbed the Cash America Pawn Store located in Colorado Springs, CO . . . [and] took sixteen firearms, approximately $15,000 in United States currency, and jewelry worth approximately $40k. At the time [he] robbed the Cash America Pawn Store it was engaged in and affected interstate commerce. He brandished the firearm during this robbery.

c. On February 14, 2011, Jesse . . . robbed the Walgreens drug store in Colorado Springs, CO with a firearm. At the time [he] robbed the Walgreens it was engaged in and affected interstate commerce. He brandished the firearm during this robbery.

d. At the time of the robberies, [Jesse] was in custody at a halfway house in Colorado Springs. [Jesse] was on parole for a felony conviction of robbery for which he served approximately eight years of a twenty-year sentence.

e. Shortly after the robberies, [Jesse] absconded from the custody of the halfway house in Colorado Springs, CO. [Jesse] wired money to his sister, [petitioner], in order for her to buy a plane ticket to fly to meet him in Colorado so she could help him escape. [Petitioner] flew to Colorado that day. [Jesse] informed [her] that he committed the robberies and that he escaped from the halfway house. [Petitioner], along with one of [Jesse's] girlfriends, then aided [Jesse] in evading law enforcement by moving with him from hotel room to hotel room, providing him food, etc. [Petitioner] bought bus tickets for her and [Jesse] who traveled to Nashville, TN via bus. [Petitioner] bought the tickets under false names. James

2

Poteete . . . picked up [Jesse] and [petitioner] from the bus station. [Jesse] paid Poteete $1,000 to drive him and [petitioner] to Asheville, NC. Poteete was, at some point, made aware of the fact that [Jesse] had committed the robberies in Colorado and was a fugitive from justice.

f.  In Asheville, NC they met [Jesse and petitioner's] parents, Ray and Kathleen . . . . On or about March 6, 2011, [Jesse], Ray, and Kathleen were seen by a witness moving into the Microtel Hotel in Chattanooga, TN. Kathleen rented the hotel under the name "Kathleen Moore," [Jesse] introduced himself to a witness at the Microtel as "Kevin Moore." Kathleen and Ray also referred to their son, [Jesse], as "Kevin Moore." [Jesse] informed Kathleen and Ray that he was a fugitive and that he had committed the robberies in Colorado Springs. While at the Microtel, the Colorado Department of Corrections ("CDOC") called Kathleen and asked if she knew where her son [Jesse] was. Kathleen told CDOC that she had not seen [Jesse], but she would inform them if she did. This was at least the second time that Kathleen lied to law enforcement about [Jesse's] whereabouts. She also lied to law enforcement in Asheville, NC all the while knowing that [Jesse] was a fugitive who had robbed a business that affected interstate commerce.

g.  On or about March 16, 2011, Kathleen and Ray moved into a house in Chattanooga. Poteete drove down from his home in Antioch, TN, and he and [Jesse] helped move Kathleen and Ray. Poteete has since admitted to [federal agents] that one of the items he moved was a bullet proof vest into Kathleen and Ray's house. [Jesse] moved in with an employee of the Microtel ("Girlfriend") who knew him as "Kevin Moore."

h.  On or about March 27, 2011, [Jesse] and his Girlfriend went to the R.K. Shows gun show at the National Guard Armory in Chattanooga. [Jesse] spoke to someone there for about thirty minutes and then left. [Jesse] then called Ray and said "bring the family collection." Less than hour later Kathleen and Ray met [Jesse] and Girlfriend at Girlfriend's residence. Kathleen and Ray transferred between ten and twelve firearms to [Jesse although] aware he was a convicted felon. These firearms, also known as "the family collection," were some of the firearms [Jesse] stole in the robbery of the Pawn Shop in Colorado Springs.

i.  [Jesse] and Girlfriend took the firearms back to R.K. Shows gun show at the Armory where [Jesse] traded three of the stolen firearms for an M-4 assault rifle. [Federal agents later] recovered these stolen firearms . . . .

j.  On or about March 28, 2011, Ray and Kathleen drove [Jesse] to Nashville, TN. According to Ray, they were supposed to drop [Jesse] off at the bus depot. Their plan was for [Jesse] to travel to New York, NY to acquire false identification which he would use to escape into Canada. For some reason, this plan never came to fruition.

k.  On or about March 29, 2011, [Jesse] was back in Chattanooga. Before [Jesse] returned to Chattanooga he met Poteete [who] saw [Jesse with] the previously

3

mentioned M-4 in a guitar case. [Jesse] resumed staying at Girlfriend's house. Kathleen and Ray were aware that [Jesse] was back in Chattanooga.

l. On April 2, 2011, a witness saw [Jesse] leaving Girlfriend's house with the . . . guitar case. . . . [Jesse] took Girlfriend's car [and] told Girlfriend that he was going to eat and then go to his parents' house. . . . Later that morning [Jesse] attempted to rob the US Money Shops located at or near 5952 Brainerd Road. The Chattanooga Police Department arrived on the scene and foiled the robbery. [Jesse] engaged the Chattanooga Police in a gun battle [and] killed . . . Sergeant Tim Chapin. . . . [O]fficers subdued [Jesse,] who was wearing a bullet proof vest[,] [and] recovered two firearms from [Jesse, both of which] were among those [he had stolen] from the pawn shop in Colorado Springs.

m. [Officers] located Girlfriend's car on the scene of the robbery. Inside the car [they] found the guitar case which contained the M-4 semi-automatic assault rifle.

n. Later that day law enforcement recovered among other things two more of the stolen guns from Girlfriend's house among [Jesse's] things.

o. [On] April 3, 2011, law enforcement . . . recovered ammunition [from] the trunk of Kathleen and Ray's car and in a drawer in the[ir] house. . . .

p. On or about April 4, 2011, [petitioner] and Poteete arrived at Kathleen and Ray's house. Kathleen gave [petitioner] and Poteete a key to a storage unit in Chattanooga and directed them to go to the storage unit and get the firearms out of it. [Petitioner] and Poteete did as they were told and took out at least six firearms. Poteete took the six firearms to his residence in Antioch, TN. Four of those firearms [Jesse] had stolen from the pawn shop in Colorado.

q. On or about April 6, 2011, [petitioner] called Poteete and told him to get rid of the firearms including the stolen firearms. [Petitioner] used code to convey this message. Poteete threw the firearms away. Kathleen then called Poteete and warned him that [federal agents] knew he had the firearms and were coming to retrieve them. Poteete then retrieved the firearms and wiped them down to conceal his fingerprints. [Agents later] recover[ed] the firearms from Poteete.

r. [Agents] interviewed [petitioner], Kathleen, Ray, and Poteete . . . . All four admitted knowing that [Jesse] had robbed the pawn shop in Colorado as well as that he was an escapee from the halfway house. They were also aware that he robbed other businesses in Colorado. They admitted that they had this knowledge and assisted [Jesse] in avoiding apprehension for these robberies and for his escape. They admitted that they did . . . not tell law enforcement about [his] location and his crimes, and they also actively hid this information from law enforcement. Kathleen and Ray admitted to knowingly transferring and disposing of firearms to [Jesse] whom they knew was a convicted felon. . . .

(R. 41, Plea Agreement at 3-7.)

The magistrate judge, who conducted the plea colloquy with petitioner's consent, found that petitioner was "fully capable and competent to enter an informed plea; the plea [was] made knowingly and with full understanding of each of the rights waived by [petitioner]; the plea [was] made voluntarily and free from any force, threats, or promises, apart from the promises in the plea agreement; [petitioner] under[stood] the nature of the charge and penalties provided by law; and the plea ha[d] a sufficient basis in fact." (R. 43, Report & Recommendation at 1; R. 37, Consent.) This Court adopted that recommendation and adjudicated petitioner guilty. (R. 45, Order.)

On February 13, 2012, petitioner was sentenced to an aggregate term of imprisonment of 135 months' imprisonment. (R. 103, Judgment.) Despite the waiver in her plea agreement, petitioner attempted to appeal, and the Sixth Circuit ultimately dismissed the appeal in August 2013. *United States v. Mathews*, 534 F. App'x 418 (6th Cir. 2013). More than two years later, in August 2015, petitioner filed a motion seeking copies of court documents, ostensibly pursuant to *Jencks v. United States*, 353 U.S. 657 (1957). (R. 139, Jencks Act Motions.) The Court ultimately denied the motions, explaining that the Jencks Act was inapplicable. (R. 147, Order.)

In December 2015, petitioner filed a motion under 28 U.S.C. § 2255; it was captioned as a "supplement" and purported to begin with "Ground Six," although petitioner had not yet filed any § 2255 motion. (R. 145, § 2255 Motion.) Nearly identical "supplements" had already been filed by petitioner's parents Ray and Kathleen.[1] (R. 143, 144, Supplements.)

In June 2016, petitioner filed a supplemental motion seeking a lesser sentence under *Johnson v. United States*, 135 S. Ct. 2551 (2015). (R. 156, Motion to Amend.) More recently,

---

[1] Only Ray had previously filed an initial § 2255 motion; although untimely, that initial motion had enumerated five grounds for relief, and, as ordered by the Court, the United States responded to Ray's initial and supplemental motions in May 2016. (*See generally* R. 131, § 2255 Motion; R. 150, Order; R. 151, Response in Opposition.)

5

she filed another motion, seeking relief under Guidelines Amendment 794. (R. 164, Motion.) In light of Standing Order 16-02, the United States now responds.[2] To facilitate this Court's review, the United States has combined and reordered petitioner's claims.

## STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to obtain relief, a petitioner must establish (1) an error of constitutional magnitude; (2) a sentence outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceedings invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). She "must clear a significantly higher hurdle than would exist on direct appeal" and show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## ARGUMENT

**I.  As a preliminary matter, petitioner's motion is untimely, and she has not identified any basis for equitable tolling.**

A one-year period of limitation applies to § 2255 motions, 28 U.S.C. § 2255(f), and that period typically runs from the date on which the judgment of conviction becomes final, *i.e.*, "at the conclusion of direct review." *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001); *accord Dodd v. United States*, 545 U.S. 353, 357 (2005). Where, as here, no certiorari petition was filed, the conviction becomes final at the expiration of the period for filing a timely petition for certiorari. *Clay v. United States*, 537 U.S. 522, 532 (2003); S. Ct. Rule 13 (a petition for a writ of certiorari must be filed within 90 days after entry of the judgment or a denial of rehearing

---

[2] The United States inadvertently overlooked the deadline set by Standing Order 16-02 for this case, given the hundreds of other *Johnson*-based § 2255 motions it received; it has thus filed, contemporaneously with this response, a motion for a *nunc pro tunc* extension.

by the court of appeals). The Sixth Circuit dismissed petitioner's appeal on August 16, 2013, so the deadline for seeking certiorari was November 14, 2013. Petitioner then had one year—until November 14, 2014—in which to file a timely § 2255 motion.

Petitioner's first pleading which referenced 28 U.S.C. § 2255 was dated in December 2015. (R. 145, § 2255 Motion.) Her initial § 2255 motion was thus untimely, and her various supplemental motions are no less untimely. One of those supplemental motions cites *Johnson*, seemingly invoking the alternate one-year limitations period which runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Although petitioner's *Johnson*-based claims are arguably timely, in that they were filed within one year after *Johnson* was decided (*see* R. 156, Motion to Amend at 1-2), she has not established that *Johnson* provides any basis upon which relief may be granted, nor does it render any of petitioner's other claims timely.

Although the one-year statute of limitations for § 2255 motions is not a jurisdictional bar and may be tolled under limited, extraordinary circumstances, petitioner has not identified, much less established, any basis for equitable tolling to be granted here. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). Equitable tolling is "used sparingly by federal courts," and "[t]ypically . . . applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). A petitioner bears the burden of establishing that equitable tolling applies to her case. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). To satisfy his burden, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010); *accord Hall v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011). Petitioner

7

has not satisfied that standard here, and "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Herman v. United States*, No. 3:04-cr-131, 2010 WL 419986, at *3 (E.D. Tenn. Jan. 28, 2010) (quoting *Jurado*, 337 F.3d at 643). Because petitioner has not established that she was pursuing her rights diligently, all of her § 2255 motions and supplements should be denied as untimely.

II.     **In any event, petitioner's claims provide no basis upon which relief may be granted.**

As an initial matter, a petitioner must set forth adequate facts which entitle her to relief. *See, e.g., O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining that where "claims are stated in the form of conclusions without any allegations of facts in support thereof," a § 2255 motion is "legally insufficient to sustain review"). Many, if not all, of petitioner's claims consist of cursory accusations without any coherent factual development or legal support, and her motions could be dismissed on that basis alone.

   A.     **Other than her *Johnson*-based claims, petitioner's claims are procedurally defaulted.**

A petitioner who raises a claim for the first time on collateral review must show cause for not raising it earlier as well as actual prejudice resulting from the error, or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Peveler v. United States*, 269 F.3d 693 (6th Cir. 2001). Petitioner has not shown either. As a result, her claims – other than the ineffectiveness and *Johnson*-based claims[3] – are

---

[3] Ineffective-assistance claims are never procedurally defaulted because they can rarely be adjudicated on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Because *Johnson* was decided by the Supreme Court after the conclusion of petitioner's direct appeal, any claims under *Johnson* were not available at that time and are thus not procedurally defaulted.

8

procedurally defaulted and could be dismissed on that basis.[4] In any event, all of petitioner's claims are meritless.

1. Petitioner has not established any violation of *Apprendi* or *Alleyne*.

Petitioner seems to believe that a jury must find the existence of any fact that increases a sentence. (R. 145, Motion at 1-5 (Grounds Six and Seven).) In fact, a jury need only find the facts, other than the fact of a prior conviction, that increase the statutorily authorized range of punishment. *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). Facts merely "influenc[ing] judicial discretion," such as facts used to calculate the advisory guidelines range, need not be found by a jury. *Id*. at 2163; a*ccord Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) ("[N]othing . . . suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute."). Moreover, a sentencing judge is "largely unlimited as to the kind of information he may consider, or the source from which it may come," *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013) (internal citation omitted), so long as the ultimate sentence imposed "falls within the range prescribed by law for [the] convicted conduct." *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (*en banc*). The "relevant conduct" from which the Court determined petitioner's *advisory* guidelines range—including conduct deemed "reasonably foreseeable" to petitioner—did not increase the *statutory* range of punishment, so *Apprendi* and *Alleyne* are not implicated, nor were they violated.

---

[4] Petitioner is likely to respond that she should be allowed to litigate even procedurally defaulted claims on collateral review because any efforts to do so on appeal would likely have been futile, given the Sixth Circuit's decision to enforce the appeal-waiver provision in her plea agreement. But where a defendant has waived her right to appeal an issue, a district court "properly refuse[s] to consider" that claim on collateral review "in light of [the] waiver of a direct appeal." *United States v. Calderon*, No. 98-1336, 1999 WL 801587, at *4 (6th Cir. Sept. 27, 1999). Having waived her rights to direct and collateral review, with few exceptions not present here, petitioner should not be allowed to circumvent that waiver via collateral review.

2. <u>The Sixth Circuit has already considered—and rejected—the claim that this Court abused its discretion by imposing consecutive sentences, and that claim may not be relitigated on collateral review.</u>

Adopting an argument raised by her parents on direct appeal, petitioner next argues that the Court failed to adequately explain its rationale for—and thus abused its discretion by—imposing consecutive sentences. (R. 145, § 2255 Motion at 4 (Ground Seven) ("the district court provided no reason for the consecutive sentences . . . [which] constuties [*sic*] abuse of discreation [*sic*]").) Because that claim was fully considered and rejected by the Sixth Circuit—which found that "[t]he district court provided sufficient justification for its decision," *Mathews*, 534 F. App'x at 427—the claim may not be relitigated.

The law-of-the-case doctrine "dictates that issues, once decided, should be reopened only in extraordinary circumstances." *United States v. Oglesby*, 55 F. App'x 353, 353 (6th Cir. 2003). Accordingly, absent "highly exceptional circumstances," a § 2255 motion may not be used to relitigate an issue decided on appeal. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *accord Hurst v. United States*, No. 88-5924, 1989 WL 27994, at *1 (6th Cir. Mar. 28, 1989) (concluding that "Hurst cannot relitigate [a particular] issue in this § 2255 proceeding because the issue was decided adversely to him on direct appeal and he has not alleged an intervening change in the law since his direct appeal"). Petitioner has not alleged, much less established, any exceptional circumstances or intervening change in the law.

3. <u>Amendment 794 does not authorize any sentence reduction for petitioner.</u>

Petitioner seeks a "minor rule adjustment and sentence reduction" in light of Guidelines Amendment 794, which was added to the Guidelines after petitioner was sentenced—it took effect November 1, 2015—and clarified under what circumstances a defendant may be eligible for a "minor role" reduction. (R. 164, Motion.) Specifically, Amendment 794 provides that, when deciding whether to grant a reduction for a minor role, courts should consider whether a

10

defendant is "substantially less culpable than the average participant in the criminal activity." U.S.S.G. App. C., amend. 794 (also providing that "[t]he fact that the defendant performs an essential or indispensable role in the criminal activity is not determinative."). Petitioner asserts that she is "not as culpable as the other participants in the criminal activity" and is thus entitled to a sentence reduction. (R. 164, Motion at 4.) But subsequent changes to the guidelines can only be considered in the context of a motion under 18 U.S.C. § 3582(c)(2), not under 28 U.S.C. § 2255. *See United States v. Carter*, 500 F.3d 486, 491 (6th Cir. 2007) (challenges to the propriety of an original sentence are cognizable only under § 2255, while claims for a lesser sentence based on later changes to the Guidelines must be filed under § 3582(c)).

Even if petitioner's motion were construed under 18 U.S.C. § 3582(c)(2), she would remain ineligible for relief because the Sentencing Commission has not designated Amendment 794 as a retroactive amendment. *See* U.S.S.G. § 1B1.10(d). Using that amendment to reduce petitioner's sentence would not be consistent with the Sentencing Commission's policy statements, as required by 18 U.S.C. § 3582(c)(2). *See United States v. Dullen*, 15 F.3d 68, 70 (6th Cir. 1994) (holding that, for a sentence to be reduced pursuant to § 3582(c)(2) because of an amendment to the Guidelines, the amendment must be listed in § 1B1.10 as being retroactive); *accord United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003) (same).

Petitioner's reliance upon *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016), is misplaced in two ways. (R. 164, Motion at 1-2.) First, her case is not on direct appeal, and *Quintero-Leyva* only held that Amendment 794 "applies retroactively in direct appeals." 823 F.3d at 521. Second, this Court is not within the Ninth Circuit, so *Quintero-Leyva* is not binding. In short, petitioner has not established any basis for granting relief under Amendment 794.

**B.      *Johnson* does not provide any basis for granting relief to petitioner.**

Petitioner seeks a lesser sentence in light of *Johnson*, which held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act[("ACCA"), 18 U.S.C. § 924(e),] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. But petitioner was not sentenced as an armed career criminal,[5] nor as a career offender,[6] nor was she subject to any other guidelines enhancements derived from U.S.S.G. § 4B1.2's definition of "crime of violence."[7] Because the residual clause deemed unconstitutionally vague in *Johnson* bears no relation to the Guidelines enhancements and cross-references about which petitioner complains (*see* R. 156, Motion to Amend), her reliance upon *Johnson* is wholly

---

[5] The Armed Career Criminal Act imposes a fifteen-year minimum sentence on a felon who unlawfully possesses a firearm after three prior convictions for a violent felony or serious drug offense. 18 U.S.C. § 924(e)(1). It defines "violent felony" as any crime punishable by more than one year of imprisonment that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

[6] Under the Guidelines, a career offender is an adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Although the Supreme Court expressly limited its analysis to the residual clause of the ACCA, *Johnson*, 135 S. Ct. at 2563, this Court later determined that Johnson's holding "applies equally to the residual clause of the [crime-of-violence definition in the] Guidelines," which largely parallels the ACCA's residual clause. *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016). Specifically, the Guidelines define "crime of violence" as "any offense . . . punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (2) "is burglary of a dwelling, arson, or extortion, [or] involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). U.S.S.G. § 4B1.2(a).

[7] For example, the base offense level for certain firearms offenses, pursuant to U.S.S.G. § 2K2.1, is enhanced for offenders with one or more prior convictions for a "crime of violence" or "controlled substance offense." *See* U.S.S.G. § 2K2.1, cmt. n.1 ("'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2.").

12

misplaced. *See Donnell v. United States*, 826 F.3d 1014, 1016 (8th Cir. 2016) ("A movant surely cannot be authorized to pursue a claim unrelated to the new rule simply by citing *Johnson* and *Welch* and claiming that his motion 'contains' a new rule.").

Petitioner also seems to suggest that *Johnson* invalidated the residual clause in § 924(c)(3)(B)'s definition of crime of violence and thus undermines the propriety of her conviction and sentence as an accessory-after-the-fact to a § 924(c) violation. (R. 156, Motion to Amend at 6-7.) But *Johnson*'s holding only directly applied to the residual clause in the Armed Career Criminal Act ("ACCA")—*i.e.*, 18 U.S.C. § 924(e)(2)(B)(ii)—and the Sixth Circuit has expressly held in a binding, published opinion that *Johnson*'s reasoning does not invalidate the differently worded residual clause in § 924(c)(3)(B). *United States v. Taylor*, 814 F.3d 340, 376-79 (6th Cir. 2016) (recognizing at least four "significant differences" between the residual clause in § 924(c)(3)(B) and the ACCA's residual clause and holding that the "argument that Johnson effectively invalidated § 924(c)(3)(B) is . . . without merit"). *Johnson* thus offers no basis for petitioner to even seek, much less obtain, any § 2255 relief.

## CONCLUSION

For the foregoing reasons, petitioner's assorted § 2255 motions should be denied.

          Respectfully submitted,

          Nancy Stallard Harr
          United States Attorney

By:   *s/ Steven S. Neff*
      Steven S. Neff
      Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that, on September 12, 2016, this response was filed electronically and a copy was mailed to petitioner by regular United States mail, postage prepaid, addressed as follows:

Rachel Mathews
No. 26360-058
F.C.I. Tallahassee
501 Capital Circle N.E.
Tallahassee, FL  32301

                                          *s/ Steven S. Neff*
                                          Steven S. Neff
                                          Assistant United States Attorney